COMMONWEALTH *vs.* BRENDA L. BROUSSEAU.

Bristol. October 3, 1995. - January 10, 1996.

Present: LIACOS, C.J., ABRAMS, LYNCH, GREANEY, & FRIED, JJ.

*Evidence*, Prior misconduct, Relevancy and materiality, Consciousness of guilt, Credibility of witness. *Practice, Criminal*, Instructions to jury, Capital case. *Witness*, Credibility.

At a murder trial, evidence of the defendant's prior use of the murder weapon and of her awareness that the gun had been used in a prior crime was relevant to show the defendant's control over the weapon and her capacity to plan the murder: there was no error, and thus no substantial risk of a miscarriage of justice, in the judge's admission of that evidence. [649-651]

At a murder trial, the judge did not err in failing to instruct the jury, on his own motion, on consciousness of guilt evidence, and no substantial risk of a miscarriage of justice was created thereby. [651-652]

At a murder trial, the judge did not err in failing to give, on his own motion, specific cautionary instructions to the jury regarding witnesses who testified under a grant of immunity or plea bargain, and no substantial risk of a miscarriage of justice was created thereby. [652-655]

In a first degree murder case this court declined to exercise its power under G. L. c. 278, § 33E, to grant a new trial or reduce the verdict, solely on the basis of the defendant's life circumstances and on the ground that one of the codefendants had been acquitted and the other had been permitted to plead guilty to murder in the second degree. [655-658]

INDICTMENT found and returned in the Superior Court Department on May 24, 1990.

The case was tried before *Patrick F. Brady*, J.

*Patricia A. O'Neill*, Committee for Public Counsel Services, for the defendant.

*Mary O'Neil*, Special Assistant District Attorney, for the Commonwealth.

ABRAMS, J. Convicted of murder in the first degree, the defendant, Brenda L. Brousseau, áppeals. She claims that the trial judge improperly: (1) admitted evidence of prior bad acts; (2) failed to instruct the jury as to the credibility of witnesses testifying pursuant to a plea bargain or grant of immunity; and (3) failed to instruct the jury as to the weight of consciousness of guilt evidence. The defendant also asks that we exercise our power under G. L. c. 278, § 33E (1994 ed.), to order a new trial or enter a verdict of a lesser degree of guilt. We affirm the conviction and decline to exercise our power under § 33E in favor of the defendant.

1. *Facts.* We set forth the facts in the light most favorable to the Commonwealth. *Commonwealth* v. *Nichypor*, 419 Mass. 209, 210 (1994). *Commonwealth* v. *Salemme*, 395 Mass. 594, 595 (1985). Two weeks prior to the victim's murder, the defendant's home was destroyed by fire. The defendant moved in with her friend, Gina Hadley, and Hadley's lover, Debra Skarpos. The defendant's young twins went to stay with another friend, the victim's wife Janice Allen Desnoyers. It was during this period that Janice told Skarpos and the defendant that she wanted her husband killed. Janice, Skarpos, and the defendant devised a plan to murder him in the parking lot of a cocktail lounge called The Rawhide. Janice was to accompany the victim to the bar and bring him out at an agreed time to his automobile, where Skarpos would be lying in wait.

On the night of the murder, Skarpos, the defendant, and the victim's stepson Aaron Allen left Hadley's around 8 P.M. and drove to The Rawhide. Skarpos had a gun taken from Hadley's closet. The defendant gave directions as Aaron drove. When they arrived at The Rawhide, the defendant instructed Aaron to drive out of the parking lot and turn right so he would know their escape route. After so doing, Aaron drove back into the parking lot and parked. Skarpos got out and hid in the victim's automobile.

While waiting in Aaron's automobile, the defendant and Aaron heard a gunshot, after which Skarpos appeared and stated that the gun had misfired. The defendant repaired the

gun, and, gun in hand, Skarpos returned to the victim's automobile.

Janice and the victim left the bar and approached the victim's automobile. As the victim was preparing to open the automobile's door, Skarpos got out of the automobile and shot and killed him. Skarpos returned to the automobile in which the defendant and Aaron were waiting, and the three drove away together. While en route, Skarpos and the defendant wiped the gun clean and the defendant tossed it through the automobile's open window.

Skarpos, pursuant to a plea bargain, pleaded guilty to murder in the second degree and testified against both the defendant and Janice, who were tried separately. Aaron and Hadley testified against the defendant under grants of immunity, and Aaron also testified against Janice. Janice was acquitted.

2. *Evidence linking the defendant with a prior crime.* A .25 caliber handgun was identified by a ballistics expert as the weapon which, in his opinion, had been used to fire the fatal bullets. Raymond Silva, the defendant's son-in-law, testified that prior to the murder he had seen the same gun in the defendant's possession. Silva also testified that sometime after the murder the defendant asked him: "If someone were to file down a firing pin [of a .25 caliber handgun], would they be able to match the shells from one crime to another crime?" Silva added that the defendant "specifically mentioned the — Norman Michaud shooting. . . . She said, would it match the shells to the Norman Michaud shooting if they had the shells to this shooting?"[1]

On cross-examination the defendant testified that: (a) she was not the owner of the gun, but (b) had once used the gun, (c) her use of the gun had some relationship to Norman Michaud, and (d) she had asked Silva whether either the

---

[1]The Michaud shooting is unrelated to the murder at issue here. The defendant was acquitted of shooting Michaud at a prior trial.

gun, or bullets fired from the gun, could be traced to the Michaud shooting.[2]

"In Massachusetts, evidence of other criminal behavior may not be admitted to prove the propensity of the accused to commit the indicted offense . . . ." *Commonwealth v. Martino*, 412 Mass. 267, 280 (1992), quoting *Commonwealth v. Gallison*, 383 Mass. 659, 672 (1981). "However, '[r]elevant evidence is not rendered inadmissible merely because it indicates that the defendant may have committed an offense other than that for which [she] is being tried.'. . . [If] the challenged evidence is admissible for a purpose other than impugning the defendant's character . . . [it is] admissible, so long as its probative value is not substantially outweighed by any prejudice. This latter determination is for the judge to make and we shall not disturb it on appeal 'except for palpable error.' " *Commonwealth v. Robertson*, 408 Mass. 747, 750 (1990), quoting *Commonwealth v. Young*, 382 Mass. 448, 462-463 (1981). Accord *Commonwealth v. Barrett*, 418 Mass. 788, 793-794 (1994); *Commonwealth v. Otsuki*, 411 Mass. 218, 236 (1991); P.J. Liacos, Massachusetts Evidence § 4.4.6, at 155 (6th ed. 1994) ("Where evidence of other crimes, wrongs, or acts is relevant in establishing motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, a particular way of doing an act or a particular skill, the evidence may be admitted if its probative value is not substantially outweighed by any prejudice").

The defendant argues that the admission of testimony which referenced the Michaud shooting was error because it was extremely prejudicial and had minimal probative value exclusive of propensity logic. We disagree. Evidence of the defendant's prior use of the murder weapon and her awareness that it had been used in a prior crime were relevant to

---

[2]The Michaud shooting was mentioned again in the prosecutor's closing argument: "Why [did the defendant ask her son-in-law about the gun], and what does it come back to, . . . filing down the firing pin and this Norman Michaud shooting, she's obviously concerned that the gun is going to be traced from one incident to the other. Why is that?"

show the defendant's control over the weapon and her capacity to plan the murder. Furthermore, the defendant's concern that the weapon could be traced to her through the Michaud shooting evidenced consciousness of guilt. Although the jury may have inferred from the testimony that the defendant had engaged in criminal behavior other than that set forth in the indictment, "we see no error, let alone palpable error, in the judge's balancing of the relative probative value and unfair prejudice of the evidence." *Commonwealth* v. *Fordham*, 417 Mass. 10, 23 (1994). Cf. *Commonwealth* v. *Daggett*, 416 Mass. 347, 354 (1993) (in defendant's trial for murder of a Brockton prostitute, admission of evidence that defendant was arrested for soliciting prostitute ten months prior "[a]lthough the question is a close one" was not an abuse of discretion). We conclude that there was no error, and consequently no substantial likelihood of a miscarriage of justice.

3. *Failure to instruct on consciousness of guilt evidence.* The consciousness of guilt evidence in this case included the following: (1) testimony given by Silva and the defendant tending to show that the defendant was afraid that the murder weapon could be traced to her; (2) testimony given by Hadley and the defendant that the defendant told Hadley that "the cops were on the way, get rid of the jean jacket and the ring" worn by Skarpos on the night of the murder; (3) Aaron's testimony that two days after the murder the defendant wanted someone to retrieve the weapon from where the defendant tossed it from the automobile; and (4) testimony of the defendant's daughter Crystal that: (a) after the murder the defendant denied responsibility, but then asked if Crystal "was going to betray her"; (b) the defendant told Crystal that "the cops . . . might come to [Crystal], and to be careful," and (c) the defendant told Crystal, "If anybody comes around, tell them you [don't] know anything about [the gun]," and "[t]hat [the gun] was Janice's and it wasn't [the defendant's], to tell the officers that."

It is "well-established that evidence tending to show consciousness of guilt will not be rendered inadmissible simply because it may reveal to the jury that the defendant commit-

ted another offense." *Commonwealth* v. *Burke*, 414 Mass. 252, 260 (1993). It is also well established that evidence of consciousness of guilt, standing alone, is insufficient to prove guilt. See, e.g., *Commonwealth* v. *Paniaqua*, 413 Mass. 796, 803 n.7 (1992). When consciousness of guilt evidence is supported by other evidence, whether to instruct the jury regarding the evaluation of the consciousness of guilt evidence, absent a request, "is left to the sound discretion of the judge." *Commonwealth* v. *Simmons*, 419 Mass. 426, 436 (1995), overruling *Commonwealth* v. *Cruz*, 416 Mass. 27, 29 (1993).

The defendant concedes that the consciousness of guilt evidence against her was supported by other evidence, and that she did not ask the judge to give a consciousness of guilt instruction. Nevertheless, the defendant argues that the judge's failure, sua sponte, to instruct the jury on consciousness of guilt created a substantial likelihood of a miscarriage of justice.[3] She relies on *Cruz*, *supra* at 29, which was overruled in *Simmons*, *supra* at 436. In *Simmons* we held that "it will not be error if [the judge] chooses not to instruct on the subject [of consciousness of guilt evidence] in the absence of a request." *Id.* *Simmons* governs this case. The judge did not err in failing, sua sponte, to instruct the jury on consciousness of guilt evidence. It necessarily follows that the judge's failure to give such an instruction did not create a substantial likelihood of a miscarriage of justice.

4. *Instructions on credibility.* Skarpos testified under an agreement permitting her to plead guilty to murder in the second degree. Aaron testified under a grant of immunity. Hadley testified pursuant to the district attorney's promise not to prosecute her. See, e.g., *Commonwealth* v. *Fanelli*, 412 Mass. 497, 501-502 (1992); *Commonwealth* v. *Benton*, 356 Mass. 447, 448 (1969).

---

[3]Specifically, the defendant contends that the judge should have given the instructions set out in *Commonwealth* v. *Toney*, 385 Mass. 575, 585 (1982): "(1) that they [the jury] are not to convict a defendant on the basis of evidence of flight or concealment [or the like] alone . . . and (2) that they [the jury] may, but need not, consider such evidence as one of the factors tending to prove the guilt of the defendant."

In their closing arguments, both the defense counsel and the prosecutor commented on the detrimental effect which a grant of immunity or a plea bargain may have on the credibility of a witness.[4] The prosecutor, in his closing argument, stated: "Sure, you're entitled to consider what deals have been made with some of the witnesses here, and what their motivation may be when they testify. You certainly have to look through that. There's no question that when the Commonwealth makes a deal with the witness, for whatever reason, it runs a risk, and you're entitled to judge their credibility on the basis of that deal. It's also true sometimes in life, you only play the cards that you're dealt."[5]

---

[4]Defense counsel discussed this issue at some length: "Aaron comes in and testifies under a grant of immunity. Now, the grant of immunity says, and I believe you will have it with you in the jury room, you can read it, that as long as you tell the truth, nothing you say can be used against you. If you come in and lie, then we could go ahead and prosecute you for perjury.

"Significantly, it's the process that was followed here. . . . Some several days after [the murder] . . . [the victim's wife] brings Aaron Allen . . . and coached [him] through a story. As Aaron is saying things she's putting words in his mouth and she's getting his story down. . . .

"This story is then taken up to the Supreme Court and he's granted immunity. And he comes down and he tell[s] us his story.

"I suggest to you right from the outset that Aaron Allen is highly motivated to lie. . . .

"Think again of what we have here. Gina Hadley not being prosecuted, Aaron Allen granted immunity, he cannot be prosecuted at all for anything he said; Debra Skarpos, the person, the shooter, and you heard the report on the autopsy, it was a contact wound, the barrel was right against the forehead, she has agreed to testify in return for being allowed to plead guilty to second degree murder.

"I say to you that all of these witnesses are under incredible pressure to deliver, if they don't, they lose their deal. And I say once again, do not convict [the defendant] on this type of testimony. You have heard them all . . . and you have heard [the defendant] today. I suggest to you that what you heard today from [the defendant] is what occurred."

[5]We noted in Commonwealth v. Ciampa, 406 Mass. 257, 265 (1989), that "[a] prosecutor's position is a delicate one. The prosecutor must be free to argue that [a witness testifying pursuant to a plea agreement] is credible, but may not explicitly or implicitly vouch to the jury that he or she knows that the witness's testimony is true." The prosecutor in this case struck the balance commendably.

The judge instructed the jury to "[t]hink about the witness's interest in the outcome of the case. Think about whether the witness had a particular motive or bias which may have influenced or affected in some way what he or she testified about."

Defense counsel did not request and the judge did not give cautionary instructions specifically mentioning the credibility of witnesses testifying under a grant of immunity or plea bargain. Nevertheless, the defendant now argues that the judge should have given an instruction sua sponte and that his failure to do so created a substantial likelihood of a miscarriage of justice. We do not agree.

"The judge is not required to grant a particular instruction so long as the charge, as a whole, adequately covers the issue." *Commonwealth* v. *Daye*, 411 Mass. 719, 739 (1992), quoting *Commonwealth* v. *Anderson*, 396 Mass. 306, 316 (1985). In *Daye*, a witness was granted immunity, police protection, and drug rehabilitation treatment in exchange for truthful testimony. The judge instructed the jury to consider the credibility of all witnesses in light of any possible bias or favoritism for one side over the other, but did not give an instruction (requested by the defendants) that "the jury should take great care in evaluating the testimony of a witness who has been promised the inducement of non-prosecution." *Id.* at 738-739. We concluded that the judge's general instructions were adequate, particularly in light of the fact that "defense counsel vigorously cross-examined [the witness] and vigorously argued to [the] jury her lack of credibility." *Id.* at 740. Accord *Commonwealth* v. *Grenier*, 415 Mass. 680, 686-687 (1993). We think that the judge's general charge regarding credibility was adequate, particularly in light of counsels' discussion of credibility in their closing arguments. Cf. *Daye, supra.*[6]

_____

[6]Our decision in *Ciampa, supra,* is not to the contrary. In that case "we held that the prejudicial admission of certain portions of a written plea agreement between the prosecution and a witness, including repeated references to the witness's obligation to tell the truth, was not cured by the judge's charge. *Id.* at 262-263. The danger . . . in *Ciampa* was that the

The judge did not err in failing to give specific cautionary instructions regarding witnesses testifying under a grant of immunity or plea bargain. See *id.*; *Grenier, supra* at 687. Thus, contrary to the defendant's argument, the judge's failure to give such an instruction did not create a substantial likelihood of a miscarriage of justice.

5. *General Laws c. 278, § 33E.* The defendant was convicted of murder in the first degree on the basis of deliberate premeditation. The evidence warranted that conclusion. Nevertheless, G. L. c. 278, § 33E, "requires us . . . to determine whether the exercise of our power is required to obtain a result 'more consonant with justice.'" *Commonwealth v. Garabedian*, 399 Mass. 304, 316 (1987), quoting *Commonwealth v. Davis*, 380 Mass. 1, 15 n.20 (1980).

The defendant contends that two circumstances justify exercise of our § 33E power. First, the defendant describes in detail how she "is a woman who has been battered by life."[7] She argues that "her miserable life and years of substance

---

jury would believe the witness was telling the truth because his benefiting from the agreement depended on his doing so." *Commonwealth v. Daye*, 411 Mass. 719, 739-740 (1992). This case does not present the same question. Unlike the prosecutor in *Ciampa*, the prosecutor here properly refrained from highlighting the requirement of truthfulness in the plea bargain and immunity agreements. And, unlike *Ciampa*, the record does not support a claim that there was "a realistic possibility" that the jurors' knowledge of the agreements caused them to give greater credence to the witnesses' testimony. See *Daye, supra* at 740.

[7]Born in 1951, the defendant as a child was beaten by her alcoholic mother and stepfather, and raped and sexually abused by her mother's alcoholic friends. The defendant became pregnant at age fourteen years and married at age fifteen years. By the time she was twenty years old, she had given birth to five children. She dropped out of school in the seventh grade. At times the defendant has been obese; she has made several suicide attempts, one resulting in a coma and hospitalization. In 1985 the defendant gave birth to twins, one with serious health problems. That same year, the defendant's brother committed suicide. The following year, the defendant separated from her husband.

The defendant has a recurring substance abuse problem and in 1989 was hospitalized with acute serum hepatitis caused by use of a dirty needle. At the time of the victim's murder, the defendant was a daily user of drugs (e.g., cocaine, heroin, and barbiturates). She also sold drugs to others.

abuse" militate against a verdict of murder in the first degree. Second, the defendant observes that according to the Commonwealth's theory of the case, Janice, Skarpos, and the defendant planned and performed the murder, but only the defendant was convicted of murder in the first degree. Janice was acquitted, and Skarpos was permitted to plead guilty to murder in the second degree.

The defendant correctly observes that "in deciding whether to 'shade the verdict,' we are entitled to give weight to the defendant's character" and background, *Commonwealth* v. *McDermott*, 393 Mass. 451, 460 (1984), quoting *Commonwealth* v. *Tavares*, 385 Mass. 140, 159, cert. denied, 457 U.S. 1137 (1982), accord *Commonwealth* v. *Seit*, 373 Mass. 83, 94-95 (1977), and that we have in a few cases indicated that inconsistent verdicts may be relevant to our decision. See *Commonwealth* v. *Vanderpool*, 367 Mass. 743, 750 (1975). See also *Commonwealth* v. *Champagne*, 399 Mass. 80, 92 (1987); *Commonwealth* v. *Pisa*, 372 Mass. 590, 597-598, cert. denied, 434 U.S. 869 (1977). We are not aware of a single case, however, where these were the sole or even the principal factors motivating our exercise of power under § 33E. A defendant's background and the existence of inconsistent verdicts, although sometimes noted in cases where we exercised that power, merely reinforced a decision based primarily on other grounds.[8] We consistently have de-

---

[8]See, e.g., *Commonwealth* v. *McDermott*, 393 Mass. 451, 460-461 (1984) (stating that error in jury instructions was most important factor in decision to exercise § 33E power, although defendant's age, mental capacity, and substance abuse problems also relevant); *Commonwealth* v. *Dalton*, 385 Mass. 190, 196-197 (1982) (reducing verdict where evidence of premeditation was weak, victim and defendant had good relationship, both victim and defendant were in ill health, and defendant was "a hard worker with no prior criminal record"); *Commonwealth* v. *Cadwell*, 374 Mass. 308, 317-318 (1978) (reducing verdict under § 33E where "the thrust of the evidence" pointed to second rather than first degree murder; also implying that defendant suffered from "emotional pressures"); *Commonwealth* v. *Seit*, 373 Mass. 83, 94-95 (1977) (exercising § 33E power where facts pointed more plausibly to manslaughter rather than murder; noting also "that the defendant was a hard worker with no prior criminal record"); *Commonwealth* v. *Pisa*, 372 Mass. 590, 597-598, cert. denied, 434

clined to exercise our § 33E power on the basis of those factors alone.[9] We do not think that the interests of justice here require a departure from our established practice.

---

U.S. 869 (1977) (reducing verdict where "evidence of murder in the first degree as distinguished from that of murder in the second degree is much less persuasive"; noting also "that the mere inconsistency of the verdicts . . . is not ordinarily enough to impel us to exercise our powers under § 33E"); *Commonwealth v. Vanderpool*, 367 Mass. 743, 749-750 (1975) (concluding "that on the weight of the evidence it would be more consonant with justice to reduce the verdict to murder in the second degree"; noting also inconsistent verdicts and defendant's age, disability, and lack of criminal record); *Commonwealth v. Jones*, 366 Mass. 805, 808-809 (1975) (reducing verdict under § 33E where "the great weight of the evidence tended to establish that the killing was not premeditated or carried out with malice aforethought"; noting also defendant's age, marriage, six small children, and absence of prior criminal record). Cf. *Commonwealth v. Williams*, 364 Mass. 145, 151 (1973) (holding inconsistent verdicts immaterial but reducing verdict because "[t]he weight of the evidence here indicates murder in the second degree . . .").

[9]See, e.g., *Commonwealth v. Prater*, 420 Mass. 569, 585 (1995) (declining to exercise § 33E power where defendant was nineteen years old, abused as a child, and had history of psychological imbalance and an IQ of seventy); *Commonwealth v. Mello*, 420 Mass. 375, 397 (1995) ("fact that the trials of the codefendants may have resulted in different outcomes does not warrant a reduction of the verdict"); *Commonwealth v. Valentin*, 420 Mass. 263, 275 (1995) ("The fact that [a coventurer] was found guilty only of murder in the second degree at his separate trial also does not warrant § 33E relief for the defendant"); *Commonwealth v. Parker*, 420 Mass. 242, 250 (1995) ("history of problems with alcohol" did not justify exercise of § 33E power); *Commonwealth v. Nichypor*, 419 Mass. 209, 219 (1994) (rejecting defendant's argument that his disadvantaged background justified a reduced verdict); *Commonwealth v. Burke*, 414 Mass. 252, 268 n.14 (1993) ("we have declined to accept [inconsistent verdicts] as sufficient to warrant the exercise of our power to reduce the verdict of the jury"); *Commonwealth v. Hussey (No. 1)*, 410 Mass. 664, 672-673, cert. denied, 502 U.S. 988 (1991) (refusing to exercise § 33E power despite evidence that defendant was twenty-one years old, had a troubled family life, had been living in difficult circumstances, and conduct was due in large part to peer pressure); *Commonwealth v. Todd*, 408 Mass. 724, 729-730 (1990) (declining to reduce first degree murder verdict where accomplice who actually stabbed victim was convicted of manslaughter); *Commonwealth v. Mattos*, 404 Mass. 672, 681 (1989) (nolle prosequi of one coventurer does not justify exercise of § 33E regarding conviction of other coventurer); *Commonwealth v. Davis*, 403 Mass. 575, 585 (1988) (defendant's character, age, and lack of prior criminal record did not justify exercise of § 33E power); *Commonwealth v. Gregory*, 401 Mass. 437, 446 (1988) (defendant's youth and asserted lack of criminal record did not

We have considered the entire case on the law and the evidence, see G. L. c. 278, § 33E, and we conclude that the interests of justice do not require a new trial or entry of a verdict of a lesser degree of guilt.

*Judgment affirmed.*

justify exercise of § 33E power); *Commonwealth* v. *Champagne,* 399 Mass. 80, 92 (1987) (coventurer's manslaughter plea did not justify reduction of two defendants' convictions of murder in first degree); *Commonwealth* v. *Glowacki,* 398 Mass. 507, 515 (1986) (defendant's "unfortunate family history" did not justify exercise of § 33E power); *Commonwealth* v. *Bertrand,* 385 Mass. 356, 366 (1982) (disparity of sentences did not warrant exercise of § 33E power); *Commonwealth* v. *Brown,* 378 Mass. 165, 173-174 (1979) ("We have on occasion reduced verdicts in the exercise of our powers under § 33E when, coincidentally, separately tried accomplices received lesser sentences. . . . We have done so, however, because the records of the trials themselves justified relief" [citations omitted]); *Commonwealth* v. *Podlaski,* 377 Mass. 339, 350 (1979) (neither acquittal of other alleged participants at separate trial nor defendant's alcoholism justified reduction of first degree murder verdict); *Commonwealth* v. *Simpson,* 370 Mass. 119, 126-127 (1976) (confederate's plea of guilty to second degree murder did not warrant reduction of defendant's conviction of first degree murder).