NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-10222

COMMONWEALTH  vs.  LUDNER IMBERT.


Suffolk.     January 9, 2018. - May 18, 2018.

Present:  Gants, C.J., Budd, Cypher, & Kafker, JJ.


Homicide.  Armed Assault with Intent to Murder.  Firearms.
    Evidence, Spontaneous utterance, Exculpatory, Firearm.
    Practice, Criminal, Transcript of evidence, Argument by
    prosecutor, Capital case.



    Indictments found and returned in the Superior Court
Department on July 23, 2004.

    The cases were tried before Thomas E. Connolly, J., and a
motion for a new trial, filed on February 6, 2015, was heard by
Christine M. Roach, J.


    Robert S. Sinsheimer (Lisa A. Parlagreco also present) for
the defendant.
    Cailin M. Campbell, Assistant District Attorney, for the
Commonwealth.


    BUDD, J.  In the early morning hours of April 3, 2004,

Vaughn Skinner, Jr., was shot and killed.  The defendant, Ludner

Imbert, was identified as the shooter and convicted by a jury of

murder in the first degree, as well as armed assault with intent to murder[1] and carrying a firearm without a license.

In this consolidated appeal, the defendant argues that several errors at trial require a reversal of his convictions and that the trial record is insufficient to permit adequate and effective appellate review.  He also claims that his motion for a new trial based on the Commonwealth's failure to disclose exculpatory evidence was improperly denied.  We affirm the defendant's convictions and the judge's order denying his motion for a new trial.  After a review of the entire record, we also decline to reduce or set aside the defendant's convictions under G. L. c. 278, § 33E.

Background.  We summarize the facts in the light most favorable to the Commonwealth, reserving certain details for discussion of specific issues.

Sometime after midnight on April 3, 2004, the victim and the defendant were at a nightclub in Revere.  The defendant arrived with several friends, including Jeff Jean Charles, who drove the defendant's vehicle.  While in the club, the victim and the defendant had a physical altercation:  the victim stepped on Charles's foot, and the defendant in turn punched the victim in the face.  The victim fell to the ground, and the

---

[1] This charge was in connection with the shooting of another individual, Corey Crump, who was shot in the back but survived.

fight spread to involve several other patrons.  The manager closed the club, and security guards ushered patrons out to the parking lot.

The defendant left through the front door of the club; the victim, who was bleeding, left through a side door.  A witness saw a man hand a firearm to another man matching the defendant's description.  Shortly thereafter, shots were fired and the victim was seen falling to the ground.  After the initial gunshots, Kehonia Vick, who knew the defendant, saw him stand over the victim and shoot him.  After the shooting, another witness and friend of the defendant, Shane Clayton, saw the defendant with a snub-nosed revolver in his hand.

After the shooting, the defendant left the area on foot, leaving his vehicle behind.  He was picked up by three young women who also had been at the club, one of whom was his girl friend.  He told his girl friend that the fight started because someone had looked at one of his friends, and that "he had to do what he had to do."  The defendant's cellular telephone records indicate that the cellular plan was terminated on the day after the murder.

Discussion. 1. Reconstructed transcript. Portions of the testimony of Vick and Clayton were not transcribed.[2] As a result, pursuant to Mass. R. A. P. 8 (e), as amended, 378 Mass. 932 (1979), the defendant moved to reconstruct the missing portion of the record "to the extent possible, on the basis of notes prepared by the trial judge and trial attorneys." Because the defendant failed to file a statement of the evidence as called for by Mass. R. A. P. 8 (c), as amended, 430 Mass. 1601 (1999), the judge reconstructed Vick's missing testimony based on the "extensive" notes he took at trial, resulting in five typewritten pages that he provided to each of the parties.[3]

The prosecutor agreed with the judge's reconstruction. However, defense counsel made handwritten annotations to the document indicating where he disagreed with the judge's recollection of the testimony. The judge rejected the defense's annotations as inaccurate and declined to insert objections made

---

[2] It is unclear from the record the reasons for the lack of transcription of the testimony of Vick and Clayton, but it does not appear to be the fault of any party.

[3] The trial judge also reconstructed the missing portion of Clayton's testimony, amounting to approximately two typewritten pages. The defendant moved to amend this portion of Clayton's testimony, noting that trial counsel made numerous objections during the testimony that were not accounted for. The motion judge denied the motion. Because on appeal the defendant does not raise any claims of error regarding Clayton's testimony, whether trial counsel preserved errors by objecting is immaterial.

by the defense, as trial counsel was unable to recall their substance.[4]

The defendant argues that his due process and equal protection rights have been violated because a complete record is necessary for effective appellate review and the reconstructed trial transcript was not an adequate substitute. We disagree. The reconstruction was adequate and conforms to the procedure established in Commonwealth v. Harris, 376 Mass. 74, 78-80 (1978).

It is well established that a defendant is entitled to a "record of sufficient completeness to permit proper consideration of his claims." Mayer v. Chicago, 404 U.S. 189, 194 (1971), quoting Draper v. Washington, 372 U.S. 487, 499 (1963). However, this does not "translate automatically into a complete verbatim transcript." Mayer, supra at 194.

In Harris, 376 Mass. at 75, we addressed the issue of a trial transcript that is incomplete or missing by no fault of either party. In such a case, "'rough accommodations' in the method in which an appeal is presented are constitutionally permissible." Id. at 77, quoting Norvell v. Illinois, 373 U.S. 420, 424 (1963). A new trial will not be granted "unless the trial proceedings cannot be reconstructed sufficiently to

_____

[4] However, at the hearing concerning reconstructing the record, the judge did make an oblique reference to the fact that defense counsel made frequent objections generally.

present the defendant's claims."  Harris, supra at 78.  We held

that

> "alternative methods of reporting the trial proceedings,
> such as a statement of agreed facts, a bill of exceptions,
> or a narrative statement based on the judge's notes, are
> constitutionally adequate if they bring before the
> appellate court an account of the events sufficient to
> allow it to evaluate the defendant's contentions" (emphasis
> added).

Id. at 77, and cases cited.

Here, the judge determined that the record could be

reconstructed based on the notes he took of the testimony

missing from the transcript.  Although defense counsel contended

that the defense made objections at trial that were not

recorded, he could not recall their substance.  Counsel

suggested corrections and notes to the judge's proposed

reconstruction, but the judge found them to be inaccurate based

on the judge's own notes.  Without any articulable claim of

error, the defendant's argument fails.[5,6]

---

[5] The defendant relies on Griffin v. Illinois, 351 U.S. 12,
20 (1956), for the proposition that in order to ensure an
"adequate and effective" appeal, indigent criminal appellants
must be provided with a transcript of the trial court
proceedings as a prerequisite to a decision on the merits of an
appeal.  However, in Griffin, the United States Supreme Court
used that phrase to describe alternatives to a "stenographer's
transcript," such as "bystanders' bills of exceptions or other
methods of reporting trial proceedings."  Id.  The Court
explained that a bill of exceptions is a document prepared from
someone's memory in condensed and narrative form and certified
by the trial judge.  Id. at 14 n.4, 20.  Griffin stands for the
rule that, as a matter of equal protection, a lack of means may
not act as an effective bar for a criminal defendant's ability

The defendant contends that Harris should be distinguished because it did not require plenary review per G. L. c. 278, § 33E. "[I]t is our duty to review the entire record pursuant to G. L. c. 278, § 33E." Commonwealth v. Britto, 433 Mass. 596, 615 n.11 (2001). Where, as here, the reconstructed record is constitutionally permissible and the defendant does not present a specific dispute over its contents relating to any claim of error, the reconstructed record itself is what is subject to § 33E review. See Mass. R. A. P. 8 (e) (describing method for correcting record).

2. Admission of Charles's statement. Clayton, who was in the vehicle that Charles entered after the shooting, testified that when Charles got into the vehicle, Charles declared, "Drive off, drive off, [the defendant] just popped that dude!" The judge admitted the statement as an excited utterance. The defendant claims that the statement was inadmissible hearsay and violated his right to confrontation. Because the defendant

_____

to exercise his appellate opportunities. It does not guarantee access to a transcript on judicial review of a trial, especially where incidents leading to the loss of a transcript are just as likely to have occurred regardless of whether the defendant is poor or rich.

[6] The judge also offered to make a copy of his trial notes available to the defendant's attorney, but she refused the offer, indicating that she was concerned not with the substance of the witness testimony but with the constitutionality of the Massachusetts rules of appellate procedure placing the burden of reconstructing the record on the defendant. See Mass. R. A. P. 8 (e), as amended, 378 Mass. 932 (1979).

objected to the statement at trial, we review for prejudicial error.  See Commonwealth v. Gomes, 475 Mass. 775, 787 (2016); Commonwealth v. Mulgrave, 472 Mass. 170, 176 (2015).

The party seeking to admit a statement as an excited utterance must show that "[1] there [was] an occurrence or event sufficiently startling to render inoperative the normal reflective thought processes of the observer, and [2] the declarant's statement was a spontaneous reaction to the occurrence or event and not the result of reflective thought." Commonwealth v. Barbosa, 477 Mass. 658, 672 (2017), quoting Mass. G. Evid. § 803(2) (2017).  The defendant focuses on the second prong,[7] arguing that the time that lapsed between the shooting and Charles's statement gave Charles time for reflective thought and an opportunity to fabricate his statement.  We disagree.

The evidence presented to the jury was that Charles ran to the vehicle soon after the gunshots.  Further, the jury heard that when Charles made the statement he was "anxious," "breathing heavy," and "looking [to] both sides."  See Mulgrave, 477 Mass. at 177 (second prong considers "circumstances of the statement, including . . . the tone and manner of the

---

[7] Witnessing a shooting is "sufficiently startling to impede normal reflective thought processes," and thus satisfies the first prong.  Commonwealth v. Irene, 462 Mass. 600, 607, cert. denied, 568 U.S. 968 (2012).

declarant"). Compare <u>Commonwealth</u> v. <u>Irene</u>, 462 Mass. 600, 607, cert. denied, 568 U.S. 968 (2012) (utterance admissible where it occurred immediately after traumatic event); <u>Commonwealth</u> v. <u>Linton</u>, 456 Mass. 534, 549 (2010) (utterance admissible where it occurred at least twenty minutes after traumatic event); <u>Commonwealth</u> v. <u>Grant</u>, 418 Mass. 76, 81-82 (1994) (utterance admissible where it occurred sixty minutes after traumatic event), with <u>Commonwealth</u> v. <u>DiMonte</u>, 427 Mass. 233, 239-240 (1998) (utterance inadmissible where it occurred at least eight and one-half hours after traumatic event).  Given the short time between the shooting and Charles's statement, the statement clearly qualifies as an excited utterance.[8]

"[S]tatements admissible as spontaneous utterances must also satisfy the confrontation clause of the Sixth Amendment to the United States Constitution, [which] bars the admission of testimonial out-of-court statements by a witness who does not appear at trial unless the witness is unavailable to testify and the defendant had an earlier opportunity for cross-examination" (quotations and citation omitted).  <u>Mulgrave</u>, 472 Mass. at 180. The defendant argues that the admission of Charles's statement violated the confrontation clause, as the statement was

---

[8] The defendant's claim that modern science shows that people can invent lies in an instant despite having experienced trauma is essentially an argument for abandoning the excited utterance exception to the hearsay rule.  We decline to do so.

testimonial and the defendant had no opportunity to cross-examine the declarant.  Upon review, we conclude that the statement was not testimonial; thus, there was no error on this ground.

A statement is testimonial where its primary purpose is "creating an out-of-court substitute for trial testimony." Michigan v. Bryant, 562 U.S. 344, 358 (2011).  The inquiry is objective, asking not what that particular declarant intended, but rather "the primary purpose that a reasonable person would have ascribed to the statement, taking into account all of the surrounding circumstances."  Williams v. Illinois, 567 U.S. 50, 84 (2012) (opinion of Alito, J.).  Charles made his statement to fellow club patrons in the context of urging them to flee from a shooting.  The argument that a reasonable person in his situation would have intended his statement to be used at a later trial strains credulity.  See Commonwealth v. Gonsalves, 445 Mass. 1, 34 (2005), cert. denied, 548 U.S. 926 (2006). Therefore, the judge did not err in admitting Charles's statement.[9]

---

[9] The defendant also argues that the statement's admission violated his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution, claiming that the statement's prejudicial effect outweighed its probative value. For evidence to be unfairly prejudicial, it must "suggest decision on an improper basis" such as a defendant's bad character.  Old Chief v. United States, 519 U.S. 172, 180 (1997), quoting Advisory Committee's Notes on Fed. Rule Evid.

3. Exculpatory evidence. The defendant moved for a new trial based on the Commonwealth's failure to produce exculpatory evidence that, the defendant argued, supports his claim of innocence.[10] He claims error in the motion judge's denial of that motion after a nonevidentiary hearing. "The decision to deny a motion for a new trial lies within the sound discretion of the judge and will not be reversed unless it is manifestly unjust or the trial was infected with prejudicial constitutional error." Commonwealth v. Jenkins, 458 Mass. 791, 803 (2011), citing Commonwealth v. Lucien, 440 Mass. 658, 669-670 (2004). We find no abuse of discretion.

The defendant filed a motion for posttrial discovery, seeking records pertaining to interviews of witnesses Corey Crump, who had been shot in the incident, see note 1, supra, and

_____

403, 28 U.S.C. App., at 860. The defendant has pointed to no such improper suggestion here, and we see none. Moreover, properly admitted hearsay evidence does not violate due process. See, e.g., Commonwealth v. Szerlong, 457 Mass. 858, 866 (2010), cert. denied, 562 U.S. 1230 (2011); Commonwealth v. Durling, 407 Mass. 108, 118-119 (1990).

[10] The defendant also argued that he should be granted a new trial because of interactions between the judge and defense counsel, and because of improperly admitted hearsay. The motion judge declined to reach those issues on the grounds that they are pure issues of law to be addressed on direct appeal and that this court grants no deference to a motion judge who was not the trial judge. See, e.g., Commonwealth v. Weichell, 446 Mass. 785, 799 (2006). However, "[t]he trial judge upon a motion in writing may grant a new trial at any time if it appears that justice may not have been done." Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001). We have already addressed the hearsay issue, and we address the other issue infra.

Krystal Owen.  In response, the Commonwealth disclosed discovery not previously provided to the defense.  The new discovery included notes from a police interview with Owen, indicating that she was unable to identify the defendant from a photographic array despite having testified before the grand jury that she saw the shooting.  As for Crump, although there were no police notes indicating that he had viewed a photographic array, the defendant's investigator submitted an affidavit stating that Crump told the investigator by telephone that Crump had been shown an array and had been unable to identify anyone.

The Commonwealth has a duty to disclose material, exculpatory evidence over which the prosecution has control in a timely manner.[11]  See Commonwealth v. Sullivan, 478 Mass. 369, 380 (2017); Mass. R. Crim. P. 14, as appearing in 442 Mass. 1518 (2004).  The failure to do so was error.  See Commonwealth v. Santana, 465 Mass. 270, 292 (2013) (prosecutor's failure to disclose key witness's inability to identify defendant was "failure of constitutional dimension").

A defendant seeking a new trial based on undisclosed evidence has the burden to show that he or she was prejudiced by

---

[11] Although the material was in the possession of the State police and was never provided to the prosecutor, the Commonwealth is responsible for the failure to provide the information to the defense.  Commonwealth v. Beal, 429 Mass. 530, 531 (1999).

the nondisclosure.  See Commonwealth v. Watkins, 473 Mass. 222, 231 (2015).  Where, as the motion judge found here, a defendant filed a specific request for exculpatory evidence prior to trial, "the defendant must demonstrate . . . the existence of a substantial basis for claiming prejudice."[12]  Id. at 231.  The defendant can meet his burden "with record support for the conclusion that the jury would have been influenced by timely disclosure of the evidence in question."  Commonwealth v. Bly, 448 Mass. 473, 486 (2007).  "Put differently, we must decide whether there is a reasonable possibility that the nondisclosed evidence would have made a difference."  Commonwealth v. Laguer, 448 Mass. 585, 594 (2007).  Here the defendant falls short.

Owen's testimony at trial was brief:  she testified that she witnessed the shooting and generally described the shooter, the clothing he wore, and the color of the gun he fired.  Owen did not identify the defendant as the shooter prior to trial or during her testimony.  Thus, the fact that she was unable to identify the defendant from a photographic array prior to trial was cumulative of information that the jury had already heard in her testimony.  "[N]ewly discovered evidence that is cumulative of evidence admitted at the trial tends to carry less weight

---

[12] "Where, on the other hand, a defendant's pretrial motion was merely a general request for exculpatory evidence, the defendant must show that the withheld evidence 'would probably have been a real factor in the jury's deliberations'" (citation omitted).  Commonwealth v. Watkins, 473 Mass. 222, 231 (2015).

than new evidence that is different in kind." Commonwealth v. Grace, 397 Mass. 303, 305-306 (1986). See Commonwealth v. Lykus, 451 Mass. 310, 326 (2008). Thus, the defendant has failed to show a "substantial basis for claiming prejudice." Watkins, 473 Mass. at 231.

The defendant has made even less of a showing with regard to the posttrial information regarding Crump. Assuming that Crump was unable to identify the defendant from a photographic array, and that the Commonwealth failed to inform the defendant of this fact prior to trial, the defendant nevertheless has not demonstrated prejudice.[13] Like Owen, Crump never identified the defendant as the shooter prior to trial. He testified at the proceeding before the grand jury, providing only a general description of the shooter, but did not testify at trial. Although he was summonsed as a witness, he did not appear and the Commonwealth was unable to locate him.

---

[13] It is not at all clear that the information that the defendant's investigator gathered was accurate. Although the investigator averred that Crump said he had failed to identify the defendant as the shooter from a photographic array, the Commonwealth has no record that the event happened. The investigator's notes stated that Crump claimed to have appeared at trial, and that he had not recognized anyone from the shooting incident. In fact, the record shows that Crump was summonsed but did not appear at trial. The motion judge concluded that, even if Crump had in fact failed to identify the defendant from a photographic array, any prejudice was negligible in light of other evidence at trial.

The defendant claims that had he known about Crump's failure to identify him in a photographic array, he would have called Crump as a trial witness. However, as the motion judge noted, whether the defendant would have succeeded in locating Crump where the Commonwealth failed, and further, whether Crump would have cooperated with the defense, is no more than "pure speculation." Moreover, just as in the case of Owen, even if Crump had testified at trial, and the jury had learned that he had failed to pick the defendant out of a photographic array, it would have been cumulative evidence, thus carrying little weight. Grace, 397 Mass. at 305-306.

In determining whether the defendant has shown a substantial basis for prejudice, "the judge must consider the strength of the case against the defendant." Lykus, 451 Mass. at 326. We agree with the motion judge that the great weight of the evidence inculpated the defendant, such that any effect of introducing the failure of Crump or Owen to identify the defendant in a photographic array would not have influenced the jury.

At trial the jury heard from Vick, who knew the defendant as well as the victim, and who unequivocally identified the defendant as the person who shot the victim. Her testimony was corroborated when Clayton testified that within moments of hearing gunshots, he saw the defendant with a handgun. Further,

Clayton testified that Charles exclaimed that the defendant "just popped that dude!"

Vick also testified that just after the shooting, she received a telephone call from the defendant in which he told her, "You don't know me.  I don't know you."  When Vick asked him why he had done "this," noting that the victim had children, the defendant responded, "He was coming at me, I had to do what I had to do."

Immediately after the shooting, the defendant left the area without his vehicle, and asked others to retrieve it for him.  Moreover, he did not return to his apartment that night, opting instead to check into a hotel.  Later, the defendant refused to return Charles's gun, explaining that he (the defendant) could no longer use his own gun.

Given the strong case against the defendant, we conclude that the defendant has failed to carry his burden of demonstrating a "substantial basis for claiming prejudice." Watkins, 473 Mass. at 231.  See Lykus, 451 Mass. at 328-329 (undisclosed report that concluded it could not identify recording as defendant's voice did not establish prejudice where witnesses who knew defendant positively identified his voice).

4.  Admission of firearm evidence.  At trial, the jury were presented with evidence of a nine millimeter firearm that was found in the defendant's possession, but that was not alleged to

have been used in the shooting.  On appeal, the defendant claims that the firearm was not relevant to show that the defendant committed the crime, and that the prejudicial impact of the firearm evidence substantially outweighed its probative value. For its part, the Commonwealth contends that the firearm evidence was properly admitted because it was relevant to show the defendant's consciousness of guilt.  We agree with the Commonwealth.

The firearm evidence consisted of a photograph of the weapon and witness testimony.[14]  Clayton testified that, after the shooting, Charles gave him a firearm to hide.  The firearm was found under the defendant's pillow on the day he was arrested.  Another girl friend of the defendant testified that, days after the shooting, she overheard the defendant tell Charles that he (the defendant) would not return the firearm because the defendant could not use his own firearm any longer.

"Where a weapon definitively could not have been used in the commission of the crime, we have generally cautioned against admission of evidence related to it."  Commonwealth v. Barbosa,

---

[14] As the defendant objected to the admission of the photograph, it is subject to review for prejudicial error. Commonwealth v. Middlemiss, 465 Mass. 627, 631 (2013).  Because the defendant did not object to the witness testimony about the firearm, we review that testimony for a substantial likelihood of a miscarriage of justice.  Commonwealth v. Vazquez, 478 Mass. 443, 448 (2017).  For the reasons discussed infra, we conclude that the firearm evidence was properly admitted under either standard.

463 Mass. 116, 122 (2012). However, where firearm-related evidence is relevant, and where its prejudicial effect does not substantially outweigh its probative value, the evidence is admissible. See Commonwealth v. Valentin, 474 Mass. 301, 306 (2016).

Here, although the firearm at issue was not used in the shooting, the evidence presented linked the weapon to the crime scene and to the defendant. Additionally, and significantly, the defendant's statement about this firearm was relevant as incriminating evidence of the defendant's consciousness of guilt, i.e., it suggested that he had disposed of, or concealed, his own firearm because it was associated with a crime. See Commonwealth v. Brousseau, 421 Mass. 647, 651 (1996) ("the defendant's concern that the weapon could be traced to her . . . evidenced consciousness of guilt"). Because the firearm evidence was not admitted either for bad character or propensity purposes, but instead to corroborate the testimony of two witnesses and to demonstrate the defendant's consciousness of guilt, the evidence was admissible. See Commonwealth v. Snyder, 475 Mass. 445, 456 (2016).

Finally, any arguable prejudicial effect of the evidence was mitigated by the judge's limiting instructions. See Commonwealth v. Vazquez, 478 Mass. 443, 449-450 (2017). The judge twice instructed the jury not to consider the defendant's

possession of the gun as evidence of the defendant's bad character or propensity to commit a crime, and reminded the jury that the Commonwealth was not contending that the firearm was the murder weapon.  There was no error.

5.  Closing argument.  The defendant also claims that the Commonwealth misstated evidence during the closing argument, resulting in reversible error.

Although prosecutors are entitled to argue "based on evidence and on inferences that may reasonably be drawn from the evidence," they may not "misstate the evidence or refer to facts not in evidence."  Commonwealth v. Kozec, 399 Mass. 514, 516 (1987).  Here, the jury heard testimony from a witness that Charles told her that "he had to break the [defendant's vehicle] window [because] the guns were inside the car."[15]  She clarified later in the testimony that, in using the pronoun "he," she was referring to Charles.  In its closing argument, the Commonwealth stated that it was the defendant who broke the vehicle window. The defendant objected at trial, and so we review for prejudicial

_____

[15] The parties do not address whether this statement may have been hearsay and therefore improperly admitted in evidence. The defendant objected to part of this testimony at trial, but not on hearsay grounds.  Assuming, arguendo, that this statement was admitted in error, it did not create a substantial likelihood of a miscarriage of justice for essentially the same reasons we set forth infra in concluding that there was no prejudice to the defendant in the Commonwealth's statement in closing that the defendant, not Charles, was the one who broke the window on the vehicle.

error.  See Commonwealth v. Wilson, 427 Mass. 336, 350-351 (1998).

We need not reach whether it was error for the Commonwealth to argue that the defendant broke the window, however, because we conclude that it was not prejudicial in any event.  We consider several factors in determining whether an error was prejudicial:

> "(1) whether the defendant seasonably objected; (2) whether the error was limited to collateral issues or went to the heart of the case; (3) what specific or general instructions the judge gave the jury which might have mitigated the mistake; and (4) whether the error, in the circumstances, possibly made a difference in the jury's conclusions."

Commonwealth v. Kater, 432 Mass. 404, 422-423 (2000).  We conclude that any error was harmless.

First, the question who broke the vehicle window did not go to the heart of the case.  See Commonwealth v. Loguidice, 420 Mass. 453, 457 (1995) (collateral matter is one that "do[es] not bear directly on the defendant's guilt," as opposed to central matters, which "directly bear[] on an element of a crime to be proved").  Contrast Commonwealth v. Lewis, 465 Mass. 119, 131 (2013), cert. denied, 376 U.S. 933 (1964).

In addition, the judge's instructions mitigated any error. The judge instructed the jury that closing arguments are not evidence and that it is the jury's recollection of the evidence that controls.  He also twice instructed the jury, once during

the precharge and again in his final charge, that the only facts they could consider were evidence from witnesses.  Such instructions are sufficient to put the jury on notice that the evidence comes from the witnesses and not the lawyers.  See Commonwealth v. Pearce, 427 Mass. 642, 645 (1998) (citing cases where "[w]e have affirmed convictions . . . on the basis of much more general instructions than in this case").  Juries are presumed to follow the judge's instructions.  Commonwealth v. Helfant, 398 Mass. 214, 228 (1986).

Finally, the question who broke the vehicle window likely did not matter to the jury's verdict.  That is, even if the jury believed that the defendant broke the window, that detail would not make it any more likely that he committed the murder where the jury heard evidence that a firearm was handed to someone matching the defendant's description before the defendant shot the victim.  Instead, it was the testimony from two witnesses, including an eyewitness who knew the defendant and testified that the defendant was the shooter, along with evidence of his actions and statements after the shooting that likely led to his conviction.  Regardless of who broke the window, the jury were presented with eyewitness testimony that the defendant was the shooter.  We therefore cannot say that the purported error made a difference to the jury.  See Commonwealth v. Daley, 439 Mass. 558, 567 (2003); Commonwealth v. Silanskas, 433 Mass. 678, 703

(2001). Thus, even assuming that the Commonwealth improperly argued that the defendant broke the vehicle window, we conclude that the defendant was not prejudiced by the error.

6. Review under G. L. c. 278, § 33E. "Our duty under G. L. c. 278, § 33E, is to consider broadly the whole case on the law and the facts to determine whether the verdict is 'consonant with justice.'" Commonwealth v. Gould, 380 Mass. 672, 680 (1980), quoting Commonwealth v. Davis, 380 Mass. 1, 15 n.20 (1980). We may order a new trial, or reduce the verdict, "for any . . . reason that justice may require." G. L. c. 278, § 33E. The defendant calls our attention to repeated disputes between the trial judge and defense counsel that, the defendant claims, deprived him of a fair trial, and requests that we exercise our power under G. L. c. 278, § 33E.

The difficult dynamic between defense counsel and the judge is readily apparent from the trial transcript. Throughout the course of the trial, the defense attorney failed to adhere to the judge's court room rules, made inappropriate comments in the presence of the jury, and interrupted the judge on multiple occasions. In response, the judge reprimanded defense counsel several times, including reminding counsel to conduct questioning from the podium, cautioning him against extraneous comments, insisting that counsel come to sidebar if he wished to discuss something further, and instructing counsel to sit down.

These admonishments, although sometimes sharply worded, were well within the judge's authority.  Trial judges are authorized and, indeed, expected "to maintain order in court proceedings so that the administration of the criminal law will be fair and just," Commonwealth v. Bohmer, 374 Mass. 368, 380 (1978), and so that proceedings maintain their "dignity, order, and decorum," Sussman v. Commonwealth, 374 Mass. 692, 695 (1978).  See S.J.C. Rule 3:09, Code of Judicial Conduct, Canon 2, Rule 2.8 (A).  "It would be a reproach to the administration of justice if a defendant, through his counsel, could pollute the atmosphere of a trial and then turn this to his own advantage on appeal." Commonwealth v. Lewis, 346 Mass. 373, 379 (1963), cert. denied, 376 U.S. 933 (1964).

Moreover, the judge gave instructions that mitigated any potential prejudice that might have resulted from the jury observing the disputes.  The judge informed the jury that he did not have an opinion regarding the case, and instructed them to disregard any tone, inflection, or facial expression that he might have had.  See Helfant, 398 Mass. at 228-229.  Contrast Commonwealth v. Sylvester, 388 Mass. 749, 750-752 (1983) (reversible error where, even though defendant counsel's conduct was not inept or antagonistic to trial judge, judge made repeated, often personal attacks on her in presence of jury).

For the foregoing reasons, we decline to exercise our § 33E power based on friction generated as a result of a judge having to rein in defense counsel's inappropriate court room conduct. See Commonwealth v. Schnopps, 390 Mass. 722, 726 (1984) (court's power under § 33E are to be used sparingly).  Additionally, we have reviewed the entire record and discern no other reason to reduce the degree of guilt or grant a new trial pursuant to our power under G. L. c. 278, § 33E.

Judgments affirmed.

Order denying motion for a new trial affirmed.