DIAZ, COMMONWEALTH vs., 100 Mass. App. Ct. 588

 
 COMMONWEALTH vs. JOAQUIN DIAZ. [Note 1]

100 Mass. App. Ct. 588
 September 2, 2021 - January 6, 2022

Court Below: Superior Court, Essex County
Present: Wolohojian, Sullivan, & Ditkoff, JJ.

 

Robbery. Assault and Battery by Means of a Dangerous Weapon. Evidence, Exculpatory, Flight, Consciousness of guilt, Photograph, Videotape, Identification. Identification. Cellular Telephone. Practice, Criminal, New trial, Instructions to jury.

A Superior Court judge did not abuse his discretion in denying a criminal defendant's motion for a new trial, where, although the Commonwealth erred in failing to inquire of and disclose exculpatory evidence (i.e., call log data from the defendant's cell phone), no prejudice arose from the error given that defense counsel deliberately avoided calling attention to the cell phone data for strategic reasons. [592-596]

At the trial of indictments charging the defendant with armed robbery, G. L. c. 265, § 17, and assault and battery by means of a dangerous weapon causing serious bodily injury, G. L. c. 265, § 15A (c) (i), a Superior Court judge acted within his discretion in admitting evidence of the defendant's flight, where the evidence was relevant to show consciousness of guilt, and where the existence of an alternative explanation for the flight went to the weight and not the admissibility of the evidence; further, the prosecutor's improper exploitation in closing argument of the absence of evidence of the defendant's immigration status as a possible reason for his flight did not give rise to a substantial risk of a miscarriage of justice, where the prosecutor's statement was brief and sandwiched between references to other evidence, where the underlying flight evidence was proper, where the alternate inference (i.e., that an innocent person might well run from a police dog pulling four police officers toward him) was plausible, and where other, compelling evidence of the defendant's guilt existed. [596-598]

At a criminal trial charging armed robbery on a theory of joint venture, a Superior Court judge's error in not instructing the jury that, in order for them to convict, they had to find that the defendant knew that a coventurer was armed did not create a substantial risk of a miscarriage of justice, where, on the facts of the case, there could be no question that the assailants were aware of the gun prior to the robbery. [598-599]

INDICTMENTS found and returned in the Superior Court Department on July 2, 2014. 

 Page 589 

 The cases were tried before Paul D. Wilson, J., and a motion for a new trial, filed on March 2, 2020, was heard by him.

 Christopher DeMayo for the defendant.

 Marina Moriarty, Assistant District Attorney, for the Commonwealth.

 DITKOFF, J. The defendant, Joaquin Diaz, appeals from his convictions, after a Superior Court jury trial, of armed robbery, G. L. c. 265, § 17, and assault and battery by means of a dangerous weapon causing serious bodily injury, G. L. c. 265, § 15A (c) (i). He also appeals from an order of a Superior Court judge denying his motion for a new trial. The prosecutor here, by her own admission, failed to fulfill her duty to inquire of the police concerning their possession of potentially exculpatory call log evidence. We conclude that the fact that evidence could reasonably be considered either inculpatory or exculpatory does not alter the prosecutor's duty to disclose it, especially upon request. Further concluding that, where defense counsel was already aware of the content of the call log and had decided not to use it for strategic reasons, there was no prejudice, we affirm the denial of the motion for a new trial.

 We also conclude that the trial judge acted within his discretion in admitting evidence of the defendant's flight as consciousness of guilt, because the existence of an alternative explanation for the flight went to the weight and not the admissibility of that evidence. Further concluding that the prosecutor's isolated misuse of that evidence in closing argument and the judge's error in failing to instruct that the defendant had to know that a coventurer was armed did not create a substantial risk of a miscarriage of justice, we affirm the convictions.

 1. Background. a. The attack. On May 17, 2014, the victim drove to his ex-wife's house to see their children. He parked across the street, got out of the car, and called his ex-wife to say he was there. The victim noticed three men walk by. As the victim reached the sidewalk in front of the house, the same three men, who had been walking up and down the street for a few minutes, ran up to him, the first man pointing a gun in his face. The gunman said, "Give me your chain," and all three began beating the victim, continuing to punch and kick him after he had fallen to the ground. During the attack, one of the men, who was wearing a plaid shirt, ripped a gold necklace with a horse-shaped pendant from the victim's neck. The victim suffered severe injuries from the attack.

 Page 590 

 A neighbor who had been sitting on her porch witnessed the incident. The victim's ex-wife also saw the attack on her home's security cameras. The security camera footage, which was played for the jury, shows the attack, but the resolution is not adequate for one to determine the identity of the assailants. The ex-wife ran outside, yelling, prompting the men to run away. The victim and his family members ran after the men, but could not see their faces. During the chase, the shooter turned around and fired his gun, but the bullet did not hit anyone. As the shooter was running, he lost his hat. [Note 2]

 The police arrived and followed a trained dog, who was alerted to the scent from the shooter's hat. The dog led the officers through a yard and over a fence. A short distance later, officers saw the defendant, yelled "police," and told him to stop. The defendant ran away and the police ran after him, apprehending the defendant at his house before he could get inside. None of the officers could remember the defendant's being pat frisked, and the transport officer acknowledged that he should have pat frisked the defendant, but did not do so.

 Police brought the defendant, handcuffed, to the scene for a showup identification. As the defendant got out of the police van, a witness standing twelve to fifteen feet away heard "a metallic tinny sound," like "something fall[ing] on the ground." The witness then saw the victim's gold pendant on the ground and showed an officer. Earlier, the victim's ex-wife had looked for jewelry on the ground and found nothing.

 The eyewitness neighbor had not seen the assailants' faces, but, at the showup, she "recognized [the defendant's shirt] as the same shirt that the guy that went by [her] house was wearing." After "look[ing] at [the defendant] quickly," the neighbor "said to [her] husband, 'That's him. That's him.'" No other witness could identify the defendant or his clothing at the scene.

 b. The cell phone data. Four days later, the police searched the defendant's cell phone (phone) pursuant to a warrant. The police extracted (but did not turn over to the prosecutor) 2,003 photograph and video recording (video) files from the defendant's phone. [Note 3] They did not extract any call log data, apparently because 

 Page 591 

of issues with the software they were using. The prosecutor was aware that the police had seized and searched the phone, but was not aware of the photograph and video files recovered from it.

 Before his first trial, [Note 4] the defendant specifically requested "all cell phone call data." Nevertheless, the prosecutor never asked the police for call log evidence. The prosecutor remained unaware throughout both trials "what specifically had been extracted from the phone" and "exactly what was on it," and mistakenly thought that the phone was password-protected.

 Further complicating matters, defense counsel had obtained phone company records detailing the defendant's call history. The records showed that the defendant had made numerous calls around the time of the robbery, including a seventeen-minute call to his wife in the Dominican Republic immediately before the assailants first appear on the surveillance video. There is also a call one minute after the attack, but no calls during either time period while the assailants appear on the surveillance video. As we discuss infra, defense counsel chose not to attempt to use the records at trial.

 c. The defendant's case. The defendant called his mother and stepfather to testify. They testified that they returned home at approximately 9 p.m., and the defendant was home then. The defendant remained in the home until approximately 10 p.m., when his mother sent him out for milk. He returned "not even two minutes later . . . screaming, 'Mom, open the door,'" and followed by police officers. The police took him into custody. [Note 5]

 d. Motion for a new trial. Three years after the defendant was convicted in a jury trial, he moved for a new trial based on ineffective assistance of counsel. [Note 6] While the defendant's motion was pending, the parties learned that the defendant's cell phone was not password-protected, making the data inside it readily accessible when the police seized the phone and obtained a warrant. [Note 7]

 Page 592 

 Based on this information, the defendant supplemented his new trial motion with a claim under Brady v. Maryland, 373 U.S. 83 (1963). The trial judge denied the motion after an evidentiary hearing, and this appeal followed.

 2. Denial of the defendant's new trial motion. a. Standard of review. "[W]e review the denial of a motion for a new trial for 'a significant error of law or other abuse of discretion.'" Commonwealth v. Duart, 477 Mass. 630, 634 (2017), cert. denied, 138 S. Ct. 1561 (2018), quoting Commonwealth v. Forte, 469 Mass. 469, 488 (2014). Where, as here, "the motion judge was also the trial judge, [his] rulings are 'afforded special deference.'" Commonwealth v. Gaudette, 56 Mass. App. Ct. 494, 503 (2002), quoting Commonwealth v. Hung Tan Vo, 427 Mass. 464, 467 (1998). "If the new trial claim is constitutionally based, this court will exercise its own judgment on the ultimate . . . legal conclusions." Commonwealth v. Rodriguez-Nieves, 487 Mass. 171, 176 (2021), quoting Commonwealth v. Tucceri, 412 Mass. 401, 409 (1992).

 The defendant moved for a new trial based on the Commonwealth's failure to produce the call log on the defendant's phone, which the police had and were holding at the station. "To obtain a new trial on the basis of nondisclosed exculpatory evidence, a defendant must establish (1) that 'the evidence [was] in the possession, custody, or control of the prosecutor or a person subject to the prosecutor's control'; (2) 'that the evidence is exculpatory'; and (3) 'prejudice.'" Commonwealth v. Sullivan, 478 Mass. 369, 380 (2017), quoting Commonwealth v. Murray, 461 Mass. 10, 19, 21 (2011).

 b. Exculpatory evidence and the duty to inquire. Due process requires "that the government disclose to a criminal defendant favorable evidence in its possession that could materially aid the defense against the pending charges." Commonwealth v. Daniels, 445 Mass. 392, 401 (2005), quoting Tucceri, 412 Mass. at 404-405. Consistent with this mandate, a prosecutor must disclose all exculpatory facts in the "possession, custody or control of the prosecutor, persons under [the prosecutor's] direction and control," or police officers aiding in the investigation and prosecution of a case. Mass. R. Crim. P. 14 (a) (1) (A), as amended, 444 Mass. 1501 (2005). Murray, 461 Mass. at 19. Accord Matter of a Grand Jury Investigation, 485 Mass. 641, 649 (2020) ("in Massachusetts, when we speak of a prosecutor's Brady obligation, we mean not only the constitutional obligation to disclose exculpatory 

 Page 593 

information but also the broad obligation under our rules to disclose any facts that would tend to exculpate the defendant or tend to diminish his or her culpability").

 Here, the cell phone was not locked and thus the recent call log data was readily accessible to the police who had seized the phone and had a search warrant authorizing its search. The prosecutor did not know this or that any information had been obtained from the cell phone. Nor, as we discuss later, would the exculpatory potential of the call log data have been readily apparent to either the prosecutor or the police.

 Nonetheless, defense counsel had specifically requested "all cell phone call data and electronic messaging data obtained by search warrant or otherwise," thus putting the Commonwealth on notice that the defendant considered call log data from the phone potentially useful to the defense. "It is well established that the Commonwealth has a duty to learn of and disclose to a defendant any exculpatory evidence that is 'held by agents of the prosecution team.'" Commonwealth v. Ware, 471 Mass. 85, 95 (2015), quoting Commonwealth v. Beal, 429 Mass. 530, 532 (1999). This "duty to inquire," Commonwealth v. Martin, 427 Mass. 816, 823 (1998), is essential to the performance of a prosecutor's discovery obligations. "'Reasonableness' is the only limitation on the prosecutor's duty of inquiry." Commonwealth v. Frith, 458 Mass. 434, 440-441 (2010). See Martin, supra (prosecutor's duty extends beyond "simply . . . turning over test information that it had in its files"). The scope of reasonable inquiry for the prosecutor, informed by the defense request for the call log data, extended to inquiring of the detectives whether that information was accessible to the government.

 At the hearing on the motion for a new trial, defense counsel testified that the prosecutor was always forthcoming with discovery and shared a "philosophic[al] background" of supporting open disclosure to the defense. For her part, the prosecutor forthrightly admitted on direct examination at the hearing that she had erred in failing to inquire of the police whether they had access to the call log data when its relevance was brought to her attention.

 Although the trial prosecutor believed that she should have located and disclosed this information, the Commonwealth now argues that the call log is not exculpatory. To be "exculpatory," evidence need not be "absolutely destructive of the Commonwealth's case or highly demonstrative of the defendant's 

 Page 594 

innocence." Daniels, 445 Mass. at 401, quoting Commonwealth v. Ellison, 376 Mass. 1, 22 (1978). It must simply tend to negate the guilt, or to reinforce the innocence, of the accused. Commonwealth v. Mcmillan, 98 Mass. App. Ct. 409, 414 (2020). Accord Mass. R. Prof. C. 3.8, as appearing in 473 Mass. 1301 (2016) ("The prosecutor in a criminal case shall . . . make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense"). The evidence may be inculpatory in one light and exculpatory in another. See Rodriguez-Nieves, 487 Mass. at 177 (statements that, "while in and of themselves inculpatory, also were exculpatory because . . . [they] provided a basis upon which to impeach" were required to have been disclosed). Indeed, the argument that it is favorable to the defense may not even be a strong one. See Commonwealth v. Heath, 89 Mass. App. Ct. 328, 335 (2016) (claim of exculpatory potential of evidence cannot be rejected merely because claim contradicts evidence at trial). So long as there is a reasonable argument that the evidence may be useful to the defense, however, it is exculpatory. If a defendant can use the evidence to aid his case or undermine the prosecution's case, Brady requires that it be turned over.

 The Commonwealth argues that the call log is not exculpatory because it shows that the defendant was on the phone before and after the crime occurred, but not when it occurred or at any other time the assailants appear on the surveillance video. In the Commonwealth's opinion, the evidence would hurt, rather than help, the defendant's case because it shows that the defendant was on the phone continually, except when he was committing the crime. That is one interpretation, and certainly a reasonable interpretation. On the other hand, the call log could show that the defendant was catching up with family members when the assailants were plotting a violent crime -- the timing of the gaps between calls, mere happenstance. It could also be used to impeach the eyewitness who testified at trial that she saw the men wandering the street before the attack but made no mention of anyone using a phone. See Murray, 461 Mass. at 20 (evidence may be exculpatory if it can be used to impeach witness).

 It is not for the prosecutor, nor for us, to decide which interpretation is more convincing, so long as there is a reasonable interpretation under which the evidence is exculpatory. See Matter of a Grand Jury Investigation, 485 Mass. at 650 ("where a 

 Page 595 

prosecutor is uncertain whether information is exculpatory, the prosecutor should err on the side of caution and disclose it"); id., quoting Commonwealth v. St. Germain, 381 Mass. 256, 262 n.10 (1980) ("prosecuting attorneys [should] become accustomed to disclosing all material [that] is even possibly exculpatory"). The call log need not have furnished the defendant with an alibi to be exculpatory. See Commonwealth v. Brown, 57 Mass. App. Ct. 852, 855 (2003). That it cuts both ways does not vitiate its potential to aid the defense. Because the call log was exculpatory, the prosecution had a duty to disclose it.

 c. Prejudice. A defendant seeking a new trial based on nondisclosed exculpatory evidence must show that he or she was prejudiced by the Commonwealth's error. Murray, 461 Mass. at 20-21. Where, as here, the defendant has made a specific discovery request, a new trial is required if the defendant can point to "a substantial basis for claiming prejudice." Commonwealth v. Imbert, 479 Mass. 575, 582 (2018), quoting Commonwealth v. Watkins, 473 Mass. 222, 231 (2015).

 "The defendant can meet his burden 'with record support for the conclusion that the jury would have been influenced by timely disclosure of the evidence in question.'" Imbert, 479 Mass. at 582, quoting Commonwealth v. Bly, 448 Mass. 473, 486 (2007). In judging whether the defendant has shown prejudice, "we must decide whether there is a reasonable possibility that the nondisclosed evidence would have made a difference." Imbert, supra, quoting Commonwealth v. Laguer, 448 Mass. 585, 594 (2007). There is no such possibility here.

 Trial counsel had the information contained in the call log, albeit in a form that would have required him to establish through some other evidence that the phone number on the call records matched the phone seized from the defendant. Trial counsel testified that, even if the Commonwealth had turned over the call log, he "wouldn't have done anything" with it. In fact, he "would [have] hope[d] that they'd stay away from [it] like it was the plague." In trial counsel's view, the evidence was not helpful but rather "was a problem."

 Trial counsel's position was logical. The defense witnesses' story followed one timeline, and the call log another. Realizing that the two were "in conflict," counsel concluded, "[W]e couldn't play them both." Counsel adopted the timeline that the defense witnesses recalled because he saw it as "a far better defense." We cannot redesign trial counsel's strategy on appeal

 Page 596 

 and imagine what good the call log might have done if the defendant did not have what counsel described as two "impeccable" witnesses (the defendant's mother and stepfather), or if the timelines mirrored one another more closely.

 The defendant asks us to put aside trial counsel's strategic decision and consider how the evidence would have affected the verdict, had it been admitted. This is not what the law instructs. See Imbert, 479 Mass. at 583 (although defendant claimed that he would have called witness had he known of witness's failure to identify defendant in photographic array, no prejudice because court skeptical whether defendant could have located witness and whether witness would have cooperated). We need not speculate what difference, if any, the call log would have made in the jury's deliberations. That dimension of the analysis is foreclosed by the record, which indicates that timely disclosure would not have affected the outcome of the trial because the defense would not have introduced the evidence.

 The policy behind mandatory disclosure of favorable evidence also invites this conclusion. Our case law recognizes that "defense counsel is more likely to treat the prosecutor's failure to disclose specifically requested material as an implied representation that the evidence does not exist and make legal and strategic decisions accordingly." Daniels, 445 Mass. at 404. This rationale has no bearing here. In fact, this case is the inverse of that cautionary tale, as counsel relied on the cell phone data (although obtained in a more procedurally cumbersome form) in preparing for trial and deliberately avoided calling attention to it. We do not discern that the Commonwealth's error caused any prejudice. Accordingly, there was no abuse of discretion in the denial of the defendant's motion for a new trial.

 3. Direct appeal. a. Evidence of flight. The defendant argues that improper evidence of flight elicited from witnesses and referenced during the prosecutor's closing argument requires a new trial. Specifically, he argues that evidence of flight was inadmissible because the defendant might have fled because of his immigration status. Because the defendant did not object at trial to the challenged testimony or to the prosecutor's remarks, "we review his claims to determine whether there was error, and, if so, whether the error created a substantial risk of a miscarriage of justice." Commonwealth v. Bannister, 94 Mass. App. Ct. 815, 822 (2019).

 "It is well settled that evidence of flight may be introduced to 

 Page 597 

show consciousness of guilt." Commonwealth v. Figueroa, 451 Mass. 566, 579 (2008), quoting Commonwealth v. Carita, 356 Mass. 132, 140 (1969). [Note 8] "[W]hen there are multiple possible explanations for a defendant's flight, it is for the jury to decide if the defendant's actions resulted from consciousness of guilt or some other reason." Commonwealth v. Morris, 465 Mass. 733, 738 (2013), quoting Commonwealth v. Prater, 431 Mass. 86, 97 (2000). Even where the other possible explanation is also criminal, the trial judge has the discretion to admit the evidence of flight. See Commonwealth v. Burke, 414 Mass. 252, 260 (1993). "For the most part, which of two crimes caused a defendant to flee or lie is a question of the weight of the evidence, not its relevance." Commonwealth v. Mack, 423 Mass. 288, 291 (1996). "Whether evidence is relevant in any particular instance and whether the evidence is so inflammatory in nature as to outweigh its probative value and thus preclude its admission are questions addressed to the sound discretion of the trial judge." Commonwealth v. Booker, 386 Mass. 466, 469 (1982).

 Here, the trial judge acted within his discretion in allowing in evidence of the defendant's flight from police minutes after the crime occurred and a block or so away, as it was relevant to show consciousness of guilt. The fact that there was an alternative explanation for the defendant's flight -- one that he believes would have hurt his case to reveal -- does not render the evidence inadmissible. See Burke, 414 Mass. at 260.

 Nevertheless, there is an issue with how the prosecutor referred to the flight evidence in her closing argument. Motions in limine are meant "to prevent irrelevant, inadmissible or prejudicial matters from being admitted in evidence." Commonwealth v. Vaidulas, 433 Mass. 247, 249 (2001), quoting Commonwealth v. Lopez, 383 Mass. 497, 500 n.2 (1981). They "must not be used to choke off a valid defense in a criminal action." Commonwealth v. O'Malley, 14 Mass. App. Ct. 314, 324 (1982), quoting State v. Quick, 226 Kan. 308, 311 (1979). "Counsel may not, in closing, 'exploit[] the absence of evidence that had been excluded at [her] request.'" Commonwealth v. Harris, 443 Mass. 714, 732 (2005), quoting Commonwealth v. Carroll, 439 Mass. 547, 555 (2003). "[A] party's success in excluding evidence from the consideration 

 Page 598 

of the jury does not later give that party license to invite inferences . . . regarding the excluded evidence." Harris, supra, quoting Commonwealth v. Mosby, 11 Mass. App. Ct. 1, 9 (1980).

 Here, during the first and second trial, the Commonwealth moved in limine to preclude the defense from introducing evidence of the defendant's immigration status, except by his own testimony. The prosecutor wanted to prevent "any other witnesses" from "com[ing] up and say[ing] the reason that [the defendant] fled was because he's not legally here." The parties agreed that, if the defendant did not bring up his immigration status, the Commonwealth would not either. After the parties reached this agreement, the trial judge in each trial allowed the motion without objection. [Note 9] The defendant did not testify at trial and thus did not offer evidence of his immigration status.

 The prosecutor, however, unfairly exploited the absence of this evidence in her closing argument, asking, "even if the defendant . . . really hadn't been involved in this, . . . then why did he run so frantically from the police?" This was improper. See Commonwealth v. Durand, 475 Mass. 657, 672 (2016), cert. denied, 138 S. Ct. 259 (2017).

 Because the defendant did not object to the closing argument, we review for a substantial risk of a miscarriage of justice. See Harris, 443 Mass. at 730. We discern none, as any prejudice to the defendant was minimal. First, the statement was brief and sandwiched between references to other evidence. Second, the underlying flight evidence was proper. Third, as the defendant argued at his first trial, the alternate inference that an innocent person might well run from a police dog pulling four police officers towards him, especially when the officer threatened to release the dog, was plausible. And, most important, the most compelling evidence of guilt, which the parties discussed at length in their closing arguments, was the appearance of the stolen pendant on the ground in front of the defendant immediately after the sound of metal hitting pavement when he was brought back to the scene for the identification. In light of these factors, we discern no substantial risk of a miscarriage of justice. See Carroll, 439 Mass. at 555.

 b. Jury instructions. "[W]here the conviction on a joint venture theory is for a crime that has use or possession of a weapon as an

 Page 599 

 element," the Commonwealth "bear[s] the burden of proving that a joint venturer had knowledge that a member of the joint venture had a weapon." Commonwealth v. Britt, 465 Mass. 87, 100 (2013). Here, the trial judge failed to instruct the jury that, to find the defendant guilty of armed robbery, they had to find that the defendant knew that one of the participants was armed. As there was no objection at trial, "we review for a substantial risk of a miscarriage of justice." Commonwealth v. Bolling, 462 Mass. 440, 452 (2012).

 Here, the attack was captured on video. The video plainly shows that the gunman prominently displayed the gun for several seconds before the other two assailants physically attacked the victim. On these facts, there can be no question that the assailants were aware of the gun prior to the armed robbery. Accordingly, there was no substantial risk of a miscarriage of justice. See Commonwealth v. Spinucci, 472 Mass. 872, 884 n.16 (2015); Commonwealth v. Vacher, 469 Mass. 425, 445 (2014).

 4. Conclusion. The judgments are affirmed. The order denying the defendant's motion for a new trial is affirmed.

So ordered. 

FOOTNOTES
[Note 1] Also known as Michael Bermudez. 

[Note 2] The Commonwealth initially thought that the defendant was the gunman, but his hands tested negative for gunshot residue, and a deoxyribonucleic acid (DNA) test excluded him as a source of the DNA on the gunman's hat. At trial, the Commonwealth argued that the defendant was the man in the plaid shirt. 

[Note 3] There is no claim that the photographs or video files were exculpatory. 

[Note 4] The defendant was tried twice; the first trial resulted in a hung jury. 

[Note 5] This version of events was not consistent with the phone records, which showed the defendant's making calls until later than 11 p.m. 

[Note 6] The motion judge, who was also the trial judge, ultimately rejected the ineffective assistance claim, finding that trial counsel's performance was adequate and had not deprived the defendant of an available, substantial ground of defense. The defendant does not challenge this ruling on appeal. 

[Note 7] They also learned, at this time, of the photographs and videos that the police had extracted from the defendant's cell phone. 

[Note 8] It appears that no party requested a consciousness of guilt instruction, and none was given. See Commonwealth v. Billingslea, 484 Mass. 606, 629-630 (2020) (within judge's discretion whether to instruct on consciousness of guilt sua sponte). 

[Note 9] On appeal, the defendant does not challenge the trial judge's order allowing the Commonwealth's motion in limine. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.